UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-535-GWU

SHARON HUDSON,                                               PLAINTIFF,

VS.                      **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

06-535 Hudson

> Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Sharon Hudson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of fibromyalgia, residuals of a hysterectomy with supra-pubic pain and tenderness, chronic lower back pain, depression, and an anxiety disorder. (Tr. 21). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Hudson retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 24-7). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of "light" level exertion, with a requirement to alternate sitting and standing as necessary, and also had the following non-exertional restrictions. (Tr. 467-8). She: (1) could occasionally climb, bend, stoop, and crawl; (2) could not tolerate exposure to temperature extremes or direct sunlight; and (3) required an object-focused environment where work changes were gradually introduced. (Id.). The VE

responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 468).

On appeal, this court must determine the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.[1] The plaintiff alleged disability due to back and shoulder problems, endometriosis, problems from a hysterectomy, and depression. (Tr. 245). She testified that her worst problem was back pain, and she also had been diagnosed with fibromyalgia and lupus by her family physician, Dr. Daniel Whitley. (Tr. 436, 439). She also had leg pain, and a long history of anxiety and depression, for which she was prescribed medications. (Tr. 443-4). Dr. Whitley had not referred her to either a mental health specialist or a rheumatologist because she was unable to afford a referral. (Tr. 446-7). She had panic attacks when she attempted to drive for long distances, but was able to shop and had not lost any weight due to depression. (Tr. 456-60). She described herself as a "clean freak," because she had to keep things sterile around her handicapped daughter. (Tr. 461). She was

---

[1] The plaintiff had filed previous applications for DIB and SSI in 2002, which were denied in an ALJ decision dated February 27, 2004, which the Appeals Council declined to review. (Tr. 18, 188-94). The ALJ in the present case declined to reopen the prior application, and noted that res judicata would apply through February 27, 2004. While slightly different mental restrictions were identified by the ALJ in 2004, the plaintiff has not raised any issue regarding Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir., 1999).

unable to lift her daughter in and out of bed because of back pain, but was able to do small amounts of cooking and laundry, as well as getting her daughter dressed and off to day care. (Tr. 433-4). Finally, Mrs. Hudson testified that part of her colon had been damaged during her hysterectomy, and she had extremely painful bowel movements, as well as gastritis. (Tr. 465).

Medical evidence in connection with the plaintiff's current application confirms that she underwent a hysterectomy in September, 2004 and had multiple areas of benign fibroid tumors removed. (Tr. 297, 308-9). However, no permanent functional restrictions are identified.

Dr. Robert Hoskins conducted a consultative physical examination of the plaintiff on March 30, 2005. (Tr. 324). His examination showed some tenderness in the shoulder, lumbar, sacroiliac, and supra-pubic areas, as well as mild crepitus in the knees and shoulders. (Tr. 325). Forward flexion was limited to 70 degrees, and straight leg raising was positive at 60 degrees on the left in a supine position, but most ranges of motion were normal. (Tr. 328-9). There was no specific abnormality of gait. (Tr. 325). Mrs. Hudson described depressed feelings because several people depended on her and she was unable to meet all their needs. (Id.). Dr. Hoskins concluded that while Mrs. Hudson would have difficulty with heavy lifting, heavy labor, and frequent stooping, bending, squatting, and crawling, there were no limitations identified that clearly excluded some light carrying, lifting, bending,

squatting, crawling, climbing, balancing, ambulation, standing, sitting, handling, gross manipulations, or traveling.  (Tr. 326).

State agency physicians and psychologists who reviewed the evidence concluded that the plaintiff did not have a "severe" physical or mental impairment. (Tr. 330, 342, 345-7).

Subsequently, the plaintiff's treating family physician, Dr. Daniel Whitley, submitted a residual functional capacity assessment limiting Mrs. Hudson to less than sedentary level lifting and less than full-time sitting, standing, and walking, in addition to numerous other non-exertional impairments.  (Tr. 364-8).  He stated that his diagnosis was fibromyalgia, along with anxiety and depression.  (Tr. 364).  Dr. Whitley's office notes show that he first examined Mrs. Hudson on June 23, 2005, at which time she complained of multiple joint problems and described difficultly walking and her left leg giving way.  (Tr. 377).  However, he did not indicate any abnormal physical findings.  (Id.).  Laboratory testing did show an elevated thyroid-specific hormone and a positive anti-nuclear anti-body screen, and Dr. Whitley prescribed Synthroid as well as pain medication. (Tr. 375-8).  However, although the physician continued to see the plaintiff through March, 2006, he did not at any point record any abnormal physical findings, merely subjective complaints.  (Tr. 371-4).

Although the plaintiff asserts on appeal that the opinion of a treating physician, such as Dr. Whitley, should be entitled to controlling weight, the ALJ reasonably concluded that there was a lack of objective evidence to support the

10

physician's findings, and adopted a residual functional capacity finding consistent with Dr. Hoskins's conclusions. The plaintiff correctly notes that fibromyalgia is not typically manifested by abnormal muscle strength, neurological reactions or restricted range of motion. Rogers v. Commissioner of Social Security, 486 F.3d 234, 244 (6th Cir., 2007) (citations omitted). However, Rogers goes on to note that "[t]he process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." Id. In the present case, while Dr. Whitley diagnosed fibromyalgia, he never identified tender points in his office notes, and Dr. Hoskins did not specifically find such points, either. Nor, given the apparent positive ANA results (Tr. 378), it is not entirely clear to a lay reviewer that all other possible conditions were ruled out.

Accordingly, substantial evidence supports the ALJ's residual functional capacity finding. The decision will be affirmed.

This the 3rd day of October, 2007.



Signed By:
*G. Wix Unthank*
**United States Senior Judge**